UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : CRIMINAL NO. 23-441 (RC) |
| v. | : |
| | : |
| JORGE AUGUSTO SOLARES RUANO, | : |
| also known as "Pelon," | : |
| | : |
| Defendant. | : |
| | : |

**GOVERNMENT'S OPPOSITION TO
SCOTT T. KALISCH'S PRO HAC VICE MOTION**

The United States of America, by and through the undersigned attorneys, respectfully submits this opposition to Scott T. Kalisch's application for *Pro Hac Vice* admission. This is Mr. Kalisch's second attempt to appear on behalf Jorge Augusto Solares Ruano (the "Defendant") in this matter.

**I.      Background**

On April 16, 2024, Mr. Kalisch filed an application to appear *Pro Hac Vice* in the above-captioned case. Dkt. No. 42. The application stated that "[o]n May 10, 2023, [Mr. Kalisch] was suspended from the practice of law for 60 days by the United States District Court for the Southern District of Florida"; and there was a "grievance pending before the Florida Bar relating to the same conduct underlying the previous suspension before the SDFL[.]" *Id*. On April 17, 2024, the Court denied Mr. Kalisch's application without prejudice and ordered Mr. Kalisch to resubmit his *Pro Hac Vice* application with further explanation as to the nature of the violations found by the Southern District of Florida.

On April 19, 2024, Mr. Kalisch amended his application by submitting a "Final Report and Recommendation" issued by the United States District Court for the Southern District of Florida.

Dkt. No. 43. According to this report, Mr. Kalisch knowingly and intentionally "disclosed protected discovery to a former client and (alleged) co-conspirator in a case involving allegations of violent human smuggling operation." *Id*. at *12. Specifically, phone records of this "(alleged) co-conspirator" "revealed multiple messages with Mr. Kalisch and detailed attempts, by [the (alleged) co-conspirator], to identify and tamper with witnesses in the underlying case." *Id*. at *4.

On May 2, 2024, the Court held a virtual hearing regarding Mr. Kalisch's application to appear *Pro Hac Vice*. At this hearing, the Court expressed concerns as to both the nature of Mr. Kalisch's previous violations and the Defendant's right to counsel-of-choice and ordered the Government to submit a written response to Mr. Kalisch's *Pro Hac Vice* motion.

Notably, without prior notice, Mr. Kalisch appeared at the May 2, 2024, hearing with a Guatemalan lawyer, Angel Gaytan, who is neither a counsel of record nor included in Mr. Kalisch's Pro Hac Vice application. The Government also knows from its investigation that Angel Gaytan is one of the Defendant's associates in Guatemala.

Shortly after the May 2, 2024, hearing and on the same day, Mr. Kalisch withdrew his *Pro Hac Vice* application due to a notification from the Supreme Court of Florida suspending him from the practice of law in the State of Florida for 60 days. Dkt. No. 47.

On August 20, 2024, Mr. Kalisch filed another application to appear *Pro Hac Vice* in the instant case, citing the completion of his suspension from the practice of law. Dkt. No. 51.

**II.     The Nature of Mr. Kalisch's Association with the Defendant**

The relationship between Mr. Kalisch and the Defendant dates back to at least around 2019, which falls within the charged conspiracy period. The prior association between Mr. Kalisch and the Defendant was profit-seeking in nature. Their symbiotic collaboration across the United States and Guatemala involved a group of significant Guatemalan cocaine traffickers and their exposure

to criminal liabilities in the United States. Several Guatemalan cocaine traffickers that have since been convicted in the United States were once Mr. Kalisch's clients or prospective clients. In fact, both Mr. Kalisch and Angel Gaytan attended some of the meetings between these Guatemalan cocaine traffickers and U.S. law enforcement. The Government is also aware that Mr. Kalisch and the Defendant met with some of these Guatemalan cocaine traffickers in Guatemala during the charged conspiracy period in connection with the U.S. investigations.

### III. Mr. Kalisch's Association with the Defendant Presents an Irreconcilable Conflict of Interest that Demands Disqualification

The circumstance surrounding Mr. Kalisch's complicated association with the Defendant is far more troubling than the one in *United States v. Gonzalez-Lopez*, where the Supreme Court held that the District Court's "erroneous deprivation" of a criminal defendant's right to choice of counsel is "structural error." 548 U.S. 140, 150 (2006). As the Supreme Court pointed out in *Gonzalez-Lopez*, "[t]he touchstone of structural error is fundamental unfairness and unreliability." *Id*. at 159. Quite opposite in the instant case, allowing Mr. Kalisch to represent the Defendant would poison this case with the "fundamental unfairness and unreliability" that the *Gonzalez-Lopez* Court sought to cure.

The *Gonzalez-Lopez* trial court's erroneous denial—which was conceded by the government in appellate proceedings—was based on the attorney's prior violation of Rule 4.2 of the American Bar Association's Model Rule of Professional Conduct by communicating with a represented party. In contrast and far more serious, Mr. Kalisch could be disqualified in the instant matter for at least two types of conflict of interest: one arising from the possibility of Mr. Kalisch being called as a fact witness by the Government or the Defendant in the upcoming trial; and the other because of Mr. Kalisch's previous representations of some of the Defendant's co-conspirators.

3

In addition to evidence of the Defendant facilitating bribes to Guatemalan judges and prosecutors to secure the release of drug traffickers, the Government plans to present evidence at trial that the Defendant actively undermined U.S. investigations by, among other things, alerting Guatemalan cocaine traffickers of their status as targets of U.S. law enforcement investigations. Given Mr. Kalisch's activities in Guatemala as one of the Defendant's associates, it is a distinct possibility that Mr. Kalisch could be called, by either the Government or the defense, to testify about his personal knowledge of the Defendant's illicit dealings. Rule and Regulations of Florida Bar 4-3.7 explicitly prescribes that "[a] lawyer shall not act as advocate at a trial in which the lawyer is likely to be necessary witness on behalf of the client" under vast majority of the circumstances. Rule 3.7(a) of the District of Columbia Rules of Professional Conduct dictates the same ("[a] lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness except [under limited circumstances]").

Second, several Guatemalan cocaine traffickers—who were the Defendant's alleged co-conspirators in the charged conspiracy—were previously Mr. Kalisch's clients or prospective clients. For at least one of these co-conspirators, the first proffer letter issued by the Government was addressed to Mr. Kalisch. Therefore, if allowed to appear for the Defendant, Mr. Kalisch's duty of loyalty and independent judgement could be compromised by his own personal interest if one or more of these co-conspirators decide to testify either for the Government or for the defense. Indeed, this is the type of disqualifying conflict of interest that overcame the accused's right to counsel-of-choice in *United States v. Wheat*, where the defense counsel's former clients were the government's witnesses. 486 U.S. 153, 164 (1988) (expressing concern that the defense counsel will fail his ethical duty to cross-examine his former client rigorously for fear of revealing or misusing privileged information); *see also United States v. Lopesierra-Gutierrez*, 708 F.3d 193,

4

201 (D.C. Cir. 2013) (expressing the same concern that "the attorney's fear that evidence concerning his involvement might come out could potentially affect virtually every aspect of his representation of the defendant.") (internal citations omitted).

### IV. Mr. Kalisch Should Also Be Disqualified to Preserve the Ethical Standards of Professional Responsibility and the Appearance of Fairness of the Upcoming Trial

The conflict of interest presented in this matter should not be waivable because it belongs to a narrow category of cases where "the resulting conflict creates a real possibility that the attorney's vigorous defense of his client will be compromised." *Id.*

But even if the identified conflict can be knowingly and voluntarily waived by the Defendant, "[f]ederal courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." *Wheat*, 486 U.S. at 160. In other words, in determining whether the right of the accused to counsel of his choosing should be honored in a particular case, the trial court must balance a defendant's constitutional right against the need to preserve the ethical standards of professional responsibility and the appearance of fairness of the judicial proceedings.

In this case, the balance tips decidedly toward disqualifying Mr. Kalisch to preserve the ethical standards and the fairness of the trial. In light of both the underlying violation of Mr. Kalisch's recent suspension, where he disclosed protected discovery to a third party who then used the intelligence to identify and tamper with witnesses, and Mr. Kalisch's prior association with the Defendant and the Defendant's co-conspirators, the Government is gravely concerned about the prospect of the trial being conducted within the ethical standards of the legal profession if Mr. Kalisch is allowed to represent the Defendant.

While the motive behind Mr. Kalisch's repeated effort to represent the Defendant is enigmatic, the presence of Angel Gaytan—one of the Defendant's Guatemalan associates—at the

May 2, 2024, hearing suggests that Mr. Kalisch is likely seeking to appear in this case for purposes other than, or at least more than, providing U.S. legal representation for the Defendant. At minimum, allowing Mr. Kalisch to appear will create an unmitigable risk of information that must be protected to conduct a fair trial—including, but not limited to, the identities of potential witnesses—being leaked to the Defendant's Guatemalan associates in advance of the trial, and these potential witnesses being tampered with as a result.

For the foregoing reasons, the Government objects to Mr. Kalisch's motion to appear *Pro Hac Vice* in this matter.

Respectfully submitted this 2nd day of October, 2024.

MARLON COBAR, Chief
Narcotic and Dangerous Drug Section
Criminal Division
U.S. Department of Justice

By: /s/ *Mingda Hang*
Mingda Hang
Acting Assistant Deputy Chief
Narcotic and Dangerous Drug Section
Criminal Division
U.S. Department of Justice
145 N Street, NE, 2nd Floor, Suite 300
Washington, DC 20530
(202) 262-8096
Mingda.Hang@usdoj.gov

Josh Katcher
Imani D. Hutty
Trial Attorneys
Narcotic and Dangerous Drug Section
U.S. Department of Justice

## CERTIFICATE OF SERVICE

    I hereby certify that a copy of the foregoing was sent through ECF to counsel of record for the Defendant, this 2nd day of October, 2024.

                                By:    */s/ Mingda Hang*
                                        Mingda Hang
                                        Acting Assistant Deputy Chief
                                        Narcotic and Dangerous Drug Section
                                        Criminal Division
                                        U.S. Department of Justice